# IN GENERAL TERM, 1873.

THOMAS E. DAWSON ET AL. *v.* MARGARET C. BROUSE ET AL.

INJUNCTION—*will not lie, against public safety.*

Where a building has become unfit and unsafe for occupancy, by reason of
   fire, or inherent defects, making it dangerous in its condition, the fact
   of a tenant holding an unexpired term of a lease will not restrain the
   owner, by an injunction, from taking down the walls, and reconstruct-
   ing the building, in such manner as he may deem best to secure safety,
   and permanency.

*Byfield & Howe,* for appellants.
*Troxell,* for appellees.

BLAIR, J.—" This was an action for an injunction. The
plaintiffs allege in their complaint that the defendants, Mar-
garet C. Brouse, Annie B. Manlove, and Abbie L. Pearce, being
the owners of certain real estate in the city of Indianapolis,
upon which was situated a three-story brick building," " and
a one-story building a part of, and annexed to, and immedi-
ately south of said main building,"—did, on the 29th day of
November, 1872, lease to the plaintiffs, by a written lease,
rooms numbered, 87 and 89 of said building, being rooms
" upon the ground floor of the main building, and also the
one-story building aforesaid, together with the cellar-ways
underneath, for the term of three years from the first day of
December, 1872; that the plaintiffs are in the possession and
occupancy of the same; that the defendants are about to tear

the same down, demolish the building, and disposess the plaintiffs, and are threatening, and making preparations for the same, &c.; wherefore they ask that the defendants may be enjoined from tearing the building down, or in any way disturbing the possession of the plaintiffs."

The defendants answered in two paragraphs, the first being a general denial. To the second paragraph a demurrer of the plaintiffs was overruled, and this ruling is assigned as error.

This paragraph contains much that does not add to its force or legal effect; much that must be regarded as mere surplusage. The substance of all the material allegations is that by reason of defects in the original construction of the building, of which defects the plaintiffs had no knowledge, the walls became insecure, the front, and rear walls bulging outward, breaking their connection with the partition walls, and the partition, and other walls, cracked to such an extent as greatly to impair the safety of the entire building, and afterwards, without the fault of the defendants, a fire broke out in the uppermost story of the main building, and destroyed the roof and its supports, and by reason of the fire, and the use of water in extinguishing it, the building was rendered less secure than it had previously been, rendering it incapable of being made secure by any repairs that could be made, hence the defendants contemplate tearing it down, and claim the right so to do, &c. The building is shown in other parts of the answer to have been erected in a business part of the city, to be occupied for business purposes.

It is objected in the first place that the answer does not meet that part of the complaint which includes the one story building in the rear, and hence only answers a part of the complaint.

The complaint says the rooms rented " include the ground floor of the main building, and the one-story building,"

Dawson *et al v.* Brouse *et al.*

and, as they rented but two rooms, we infer from the complaint that they run back from the front to the rear of the one-story building, and the occupancy of either of the rooms in the main building, included the extension of the same rooms in the one-story building, and that taking down the walls of one rendered the other useless. The complaint does not show that the portion of the rooms in the one-story building can be used without those in the main building, but on the contrary leads us to infer that they cannot be so used. Under these circumstances they have no right to complain of the answer in the above respect.

When a building is located in a city, on a business street, and the building is to be occupied for business, and other purposes, and the walls have become insecure and dangerous from defects in the construction, or from the effects of fire, it is certainly right that the walls should be taken down. Safety to the public, safety to those persons who may frequent the building, and its vicinity require a reasonable care in this respect. The right to enforce the repair, or taking down of such walls, is one that may be exercised by municipal, or other public authorities, and is so manifestly for the interests, and safety of the public, that individual interests, and claims must yield to the claims of the public. If the walls have become insecure, and endanger the occupants of the building, or the passers-by upon the street, if they are so insecure that danger may reasonably be apprehended, it is the duty of the owners to make them secure, and their only assurance of immunity from probable loss, and damage by actions for injuries to the life, or property of others, in case of the walls or floors giving way, lies in acting promptly and efficiently in removing the danger.

We are, therefore, of opinion that the answer was sufficient.

Upon issues being joined upon the answer, the cause was

tried, the Court, at the request of the plaintiffs, making a special finding of facts, and conclusions of law. Judgment was rendered refusing the injunction, and dismissing the complaint. The plaintiffs have appealed, and the next, and only remaining error assigned, is, error in the conclusions of law.

We do not deem it necessary to set out the entire finding of facts.

Those in reference to the condition of the building are substantially as follows :

The fire in the month of April, 1873, left the whole block unfit for occupancy, or business purposes; the roof was so injured as to afford but slight, if any, protection from rain, and the continued occupancy, or use of the rooms, was impracticable without a new roof.

" That after said fire a part of the walls of said building, in consequence of originally defective construction, or as a result of said fire, or from both causes combined, were so cracked, and bulged as to be unsafe, and said building could not be sufficiently repaired by replacing the roof, and other parts of the wood-work injured by the fire. The south wall of the main building was, and is, badly cracked above the first story, and between that and the third story, and is one and three quarter inches out of line, or plumb. The east wall has a breach in the south, and in the second story ; the north wall is a little, but not much out of a vertical line ; the four brick partition walls, running north and south from bottom of the cellar to the floor of the third story are broken loose from the north and south walls above the first story, and give the latter no strength, or support, above said first story; and the south cellar wall was poorly constructed, owing to defective mortar used in it, or from the mortar being frozen during the building of said wall; but said cellar wall would support a new wall built upon it for a period longer than the continuance of plaintiffs' lease, but it is not

strong enough to sustain a good upper wall as long as such a wall ought reasonably to stand."

Other findings show that the building could be repaired so as to be reasonably safe for a period longer than the residue of the term of the plaintiffs' lease, " by taking the south wall down to the top of the first story," and the south ends of all the partition walls, and rebuilding them properly, and by securing the north wall with iron anchor to the partition walls and to the joists, and putting on a new roof, and repairing the plastering; but with such repairs the building would not be " as good, nor as permanent or safe in character as a new building properly constructed would be. That such repairs would cost $3500, or $4000; and the annual rental value of the building prior to the fire, was three thousand six hundred dollars."

That the building is located on a part of Market street devoted to business, and that the present building has the public reputation of being unsafe, and it will be to the interests of the defendants to replace the building wholly by a new one, " because of the impracticability of making a permanently safe and substantial building out of the present structure. That it would be to the pecuniary interests of the plaintiffs to have it speedily repaired, that for other rooms of like dimensions, and suitable for their business, they would now have to pay an increased rent, but the damages they would sustain by being compelled to remove would not be irreparable, but might be compensated in damages, if their legal rights are violated by the acts of the defendants in demolishing the present structure."

These findings fully sustain all the material allegations of the answer. Indeed, they make a stronger case for the defendants, than the allegations of the answer. They show the condition of the building to be such that for the time being it is unfit for occupancy; that in no event can it be

made reasonably safe, without taking down the entire rear wall to the top of the first story, and the south end of the partition walls down to the same level, and rebuilding the same. Even with these repairs, and others which are also found to be necessary, the building would only be reasonably secure for a period longer than the remaining term of the plaintiffs, and not as long as such a building ought reasonably to stand, and that a permanently safe, and substantial building cannot be made out of the present structure. To make the repairs would necessarily occupy almost as much time as to take the walls down, and rebuild. At most, the difference in time could not seriously affect the rights of the plaintiffs, and during such time, if either course is pursued, the rooms are unfit for occupancy. If the position assumed by the plaintiffs is correct, the defendants will be compelled to repair the building as best they can, still leaving it with inherent defects, that in a few years at most, would render it again unsafe. During this period the defendants would have full knowledge of these inherent defects, and that it was only "reasonably safe," and that this moderate degree of safety, would only last for an uncertain time, and might terminate in a disastrous fall of the building, or some portions of it, when least expected.

This would be compelling the defendants to assume an unreasonable risk in maintaining a structure which they know to have defects rendering its safety to the occupants and the public, very questionable. Under these circumstances, we believe the defendants should not be prevented from reconstructing the building, so that permanent safety can be secured.

It is true that the term of the plaintiffs' lease has not expired, and they yet have possession, but that they should persist in remaining in a building whose walls are manfestly unsafe, both to themselves, and the public, so as to prevent the owners from making it safe, is unreasonable.

The decision of this cause settles nothing as to the covenants, or conditions of the lease, held by the plaintiffs.

We simply hold that the building, having become unfit and unsafe to be occupied, the Court will not, on the application of a tenant holding an unexpired term of a lease, restrain the landlord by an injunction, from taking down the walls, and reconstructing the building in such manner as he may deem best to secure safety, and permanency.

No fact is alleged in the complaint, or found to exist, indicating that the plaintiffs will suffer irreparable damage by the threatened action of the defendants. On the contrary, it is found that they can be compensated, and that before the suit was commenced, they offered to accept a sum of money as compensation. On this ground alone, the conclusions of law would be well and fully sustained.

Judgment affirmed.